2005 VT 100

## Mid Vermont Christian School v. Department of Employment and Training

[885 A.2d 1210]

No. 04-473

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed August 26, 2005

*Anthony R. Duprey* of *Neuse Smith & Venman, PC*, Middlebury, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Bridget C. Asay*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Dooley, J.** Appellant, Mid Vermont Christian School (MVCS), appeals the Department of Employment and Training's determination that MVCS is an employer subject to the unemployment compensation law and must therefore pay an employer contribution tax to fund any unemployment compensation claims by its employees. MVCS argues that, as a religious school, it is entitled to exemption under the statute, and that denial of that exemption violates its constitutional rights. We agree with the appeals referee and the

Employment Security Board (ESB) that MVCS is not an exempt employer, and hold that applying the statute does not violate MVCS's rights under either the United States or the Vermont Constitutions.

¶ 2. MVCS is an independent Christian school approved by the Vermont State Board of Education with an enrollment of approximately 160 students in grades preschool through twelve. In addition to a traditional curriculum that includes subjects such as math, science, history, and computer science, MVCS integrates teachings from the Bible throughout its curriculum. Students are also required to attend daily Bible classes and weekly chapel.

¶ 3. The school's stated mission is "to provide a sound, effective educational program that is well-integrated with Biblical principles directed toward the end that children may occupy their places worthily in community, church, state, . . . the world." MVCS has articulated its religious values in a Statement of Faith found in Article II of its constitution. All faculty, staff, board members, full association members, and advisory board members must declare their unconditional agreement with that Statement of Faith, be regular participants of a church, and be scripturally sound in their belief, and lead "exemplary lives." Parents must also assent to the Statement of Faith when enrolling their children at MVCS.

¶ 4. MVCS is not a church nor is it owned by or affiliated with any church. It does, however, receive financial and promotional support from roughly twenty-five to thirty churches. Annually, these churches contribute approximately $64,000 toward the school's $900,000 operating budget.

¶ 5. The MVCS Board of Directors supervises the "governance, maintenance and growth" of the school. Specifically, the Board sets school policies, oversees school finances and supervises school employees. It is elected by the MVCS Association, which is comprised of students' parents and other individuals who make a financial contribution to the school. A pastoral advisory board advises the Board of Directors on how to provide a spiritually-sound Christian education.

¶ 6. On October 8, 2003, the Vermont Department of Employment and Training (DET) presented MVCS with a notice of employer liability, stating that MVCS was an employer subject to the provisions of the unemployment compensation law. Based on this status, DET found that MVCS would be responsible for payment into the state unemployment compensation fund at its assigned contribution rate, and that eligible MVCS employees would be entitled to unemployment compensation benefits. See 21 V.S.A. §§ 1348 (eligibility procedure),

1344 (disqualifications). Prior to receipt of that notice, MVCS relied upon a 1992 letter from DET that stated that MVCS was not an employer as defined by statute.

¶ 7. MVCS appealed the October 2003 determination to the appeals referee, who concluded that the services performed by MVCS employees were not excluded from unemployment compensation coverage because MVCS was not a church or convention of churches, was not operated primarily for religious purposes, and was not operated, supervised, controlled, or principally supported by a church or convention or association of churches. MVCS then requested review of the referee's decision by the ESB. On August 31, 2004, the ESB sustained the decision of the appeals referee. On appeal, MVCS argues that (1) it is covered by an exemption contained in federal law and that the exemption is binding on the State, and (2) the ESB decision violates its rights under the United States and Vermont constitutions. DET maintains that MVCS does not qualify for an exemption under the Vermont statute, nor is Vermont obligated to adopt the federal exemption. It also argues that application of the Vermont statute to MVCS does not violate the school's constitutional rights.

¶ 8. We start with the application of the Vermont statute to MVCS and its circumstances. Although MVCS does not challenge the ESB's construction of the statute, that construction is central to the resolution of MVCS's constitutional arguments. There is no dispute that MVCS fits within the general definition of an employer under the unemployment compensation law and that it has employees. The statute contains, however, an exemption from the definition of "employment" for services performed:

> [I]n the employ of a church or convention or association of churches, or an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches[.]

21 V.S.A. § 1301(6)(C)(vii)(I).

¶ 9. The exemption consists of two parts. Generally, the first clause exempts churches, and the second clause exempts organizations "operated primarily for religious purposes" *and* affiliated with a church. Neither party contends that the first clause applies — that is, they agree that MVCS itself is not a "church or convention or association of churches." The ESB found that neither requirement of the second clause applies — that is, it found that MVCS is neither "oper-

ated primarily for religious purposes" nor "operated, supervised, controlled, or principally supported by a church or a convention or association of churches."

¶ 10. On the first requirement of the second clause, the appeals referee and the ESB found that MVCS "is operated primarily for educational, not religious purposes." It concluded that although the school's Bible instruction, inculcation of Christian values and glorification of God were integral parts of the educational mission, the primary purpose is to provide a thorough education, combining traditional and modern subjects to prepare the majority of graduates for college. On the second requirement, the referee and the ESB found that MVCS is not "operated, supervised, controlled, or principally supported by a church or convention of churches or association of churches" based on various statements in the school's literature that "[t]he school is independent (not affiliated with any one church)," is an "interdenominational Christian School not affiliated with any one church," and is "autonomous" and not subject to any ecclesiastical entity. They also relied upon the facts that MVCS is run by an independently elected, autonomous board of directors and derives its operating funds "almost exclusively from tuition payments."

¶ 11. Because MVCS has failed to appeal from the decision of the ESB that its employees are covered by the unemployment compensation statute, we do not review this ruling. We note, however, that the issues have been litigated extensively in other jurisdictions with mixed results, especially with respect to whether similar organizations are operated primarily for religious purposes. See *Samaritan Inst. v. Prince-Walker*, 883 P.2d 3, 8 (Colo. 1994) (concluding pastoral counseling organization not operated primarily for religious purposes because primary activities within Colorado administrative); *Nampa Christian Sch. Found., Inc. v. State*, 719 P.2d 1178, 1183-84 (Idaho 1986) (explaining that independent Christian school is operated primarily for religious purposes and, because it could not exist without the moral support of local churches, is principally supported by an association of churches); *Cmty. Lutheran Sch. v. Iowa Dep't of Job Serv.*, 326 N.W.2d 286, 291 (Iowa 1982) (ruling that, as a matter of law, Lutheran parochial school is operated primarily for religious purposes) (collecting cases); *Baltimore Lutheran High Sch. Ass'n, Inc. v. Employment Sec. Admin.*, 490 A.2d 701, 709 (Md. 1985) (affirming administrative agency determination that Lutheran parochial school is operated primarily for educational, and not religious, purpose); *Employment Sec. Admin. v. Baltimore Lutheran High Sch. Ass'n*,

*Inc.*, 436 A.2d 481, 487 (Md. 1981) (setting out factors to determine whether independently incorporated parochial school is operated primarily for religious purposes); *Miller v. Sts. Peter & Paul Sch.*, 711 N.E.2d 311, 314-15 (Ohio Ct. App. 1998) (Catholic school operated by church parish was operated primarily for religious purposes and controlled by a church); *Bach v. Steinbacher*, 609 N.E.2d 607, 608-09 (Ohio Ct. App. 1992) (Hebrew University with primary purpose to educate Rabbis is operated primarily for religious purposes). Because of the posture of this case, we do not decide whether services performed by employees of MVCS are exempt from the definition of employment pursuant to 21 V.S.A. § 1301(6)(C)(vii)(I).

¶ 12. MVCS's primary argument is that it is exempt from providing unemployment compensation to its workers based on additional exemption language contained in federal unemployment compensation law, but not in the corresponding Vermont statute. Unemployment compensation is a "cooperative federal-state program of benefits to unemployed workers." *Wimberly v. Labor & Indus. Relations Comm'n of Mo.*, 479 U.S. 511, 514 (1987). Under the Federal Unemployment Tax Act (FUTA), the Secretary of Labor must annually certify that a state's unemployment compensation program meets certain minimum standards in order for that state to be eligible for federal grant money and for the state's employers to qualify for tax credits under the program. See 42 U.S.C. § 501 (grants to states for unemployment compensation administration); 29 U.S.C. § 49d (appropriations to states by Federal Employment Service); 26 U.S.C. § 3302 (ninety-percent tax credit for employers). The minimum standards of coverage required to meet federal certification are defined in 26 U.S.C. § 3304(a). *Wimberly*, 479 U.S. at 515. A separate statute, § 3309(b), lists permissible exemptions from participation in the compensation program for certain nonprofit and government employment. Vermont's unemployment statute, 21 V.S.A. § 1301(6)(C)(vii)(I), contains the exemptions in 26 U.S.C. § 3309(b)(1)(A) and § 3309(b)(1)(B), but in 1997 Congress added a third exemption for "an elementary or secondary school which is operated primarily for religious purposes, which is described in section 501(c)(3), and which is exempt from tax under section 501(a)." 26 U.S.C. § 3309(b)(1)(C). The Vermont Legislature has not adopted this exemption.

¶ 13. Both sides of this case agree after the additional federal exemption, state unemployment compensation programs are no longer required to cover those elementary or secondary religious schools encompassed by the exemption. MVCS further argues that the

exemption in fact *compels* every state to exempt these religious schools from participation in the state programs. MVCS further argues that if a state refuses to enact the 1997 amendment, a qualifying religious school is nevertheless entitled to the federal exemption because the federal exemption preempts the nonconforming state law. The ESB rejected MVCS's arguments, relying upon the fact that the Secretary of Labor has continued to certify that the Vermont unemployment compensation program complies with federal law despite the failure of the Legislature to adopt the 1997 federal exemption. We agree with the ESB.

¶ 14. States are vested with the power to impose general taxes on employers for unemployment compensation programs. *Standard Dredging Corp. v. Murphy*, 319 U.S. 306, 308 (1943). FUTA augments the states' power to provide unemployment compensation protection by providing benefits to states that meet congressionally-defined minimum standards of unemployment compensation coverage. The states remain free to expand their unemployment compensation coverage beyond the federal minimum standards. *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 775 n.3 (1981); *Salem College & Acad., Inc. v. Employment Div.*, 695 P.2d 25, 29 (Or. 1985); *Prof. Samplers, Inc. v. S.C. Employment Sec. Comm'n*, 513 S.E.2d 374, 378 (S.C. Ct. App. 1999). In effect, under the minimum federal requirements, *coverage* is mandatory, but exemptions are not, and the federal law creates a floor on state eligibility, but not a ceiling. See *Standard Dredging Corp.*, 319 U.S. at 310 (exempting employers from the federal act does not operate to exempt them from state unemployment insurance taxes); *Koolau Baptist Church v. Dep't of Labor & Ind. Rel.*, 718 P.2d 267, 270-71 (Haw. 1986); *Special Care of N.J., Inc. v. Bd of Review*, 742 A.2d 1023, 1029 (N.J. Super. Ct. App. Div. 2000) ("[E]xistence of an exemption under FUTA does not mandate the same exemption under state law."); *In re Forrence Orchards, Inc.*, 448 N.Y.S.2d 803, 804 (App. Div. 1982) (that federal law "excludes certain items from its definition of 'employment' does not preclude a state from including those items in its definition"). This overall principle is in accordance with the purpose of unemployment compensation, to aid those whose unemployment is involuntary. *Littlefield v. Dep't of Employment & Training*, 145 Vt. 247, 254, 487 A.2d 507, 510 (1984). Vermont has opted to include independent, nonchurch affiliated religious schools within the scope of the unemployment compensation program. By doing so, it provides more

expansive coverage than the federal scheme, as permitted under the federal law.

¶ 15. MVCS cites two United States Supreme Court cases, but neither supports its argument. The first case, *St. Martin Evangelical Lutheran Church v. South Dakota*, we have cited above as authority supporting the state's more expansive unemployment compensation program, but we distinguish the particular issue decided in that case because the holding "concerns only schools that have no legal identity separate from a church." 451 U.S. at 782 n.12. That case was decided entirely under the first exemption for "a church or convention or association of churches" and explicitly declined to interpret the provision we deal with in this case, "an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches." 21 V.S.A. § 1301(6)(C)(vii)(I).

¶ 16. MVCS also argues that *California v. Grace Brethren Church*, 457 U.S. 393 (1982), requires states to amend their statutes to conform to federal law. The decision in *Grace Brethren* is based on the Tax Injunction Act, and as a result, is no direct help. MVCS finds a suggestion in the Court's language that it would rule for MVCS in this case. We cannot, however, agree that the case contains such a suggestion.

¶ 17. *Grace Brethren* arose before the 1997 amendment that added the additional federal exemption and involved a constitutional challenge to the narrow scope of the first two federal exemptions — that is, the two that exist in Vermont law as 21 V.S.A. § 1301(6)(C)(vii)(I). These two exemptions were left after Congress repealed an earlier, broader amendment. MVCS argues that the Supreme Court stated that each state law must have these two exemptions. *Grace Brethren*, 457 U.S. at 398. In fact, all the Court stated was that states could no longer use the repealed exemption. *Id.* To have gone further would have been inconsistent with *Standard Dredging*. 319 U.S. at 310.

¶ 18. Finally, we note the ESB's rationale — that the Secretary of Labor has endorsed DET's view of federal law by continuing to certify Vermont's unemployment compensation program. See *Steward Mach. Co. v. Davis*, 301 U.S. 548, 594-95 (1937). If certification were denied, Vermont would become ineligible for federal grant money and Vermont employers would lose their credit for the amounts they pay into the state unemployment fund. The Vermont unemployment compensation program has been certified without this exemption every year since the federal amendment was passed in 1997. We agree

that the Secretary's certification action is an endorsement of DET's interpretation of federal law — the interpretation we have reached in this decision — by the official responsible for administering the federal program and therefore entitled to deference. *Hogan v. Dep't of Soc. & Rehab. Servs.*, 168 Vt. 615, 617, 727 A.2d 1242, 1243-44 (1998) (mem.).

¶ 19. MVCS claims that the DET's application of the statute to the school violates the First Amendment and the Equal Protection Clause of the Federal Constitution, and the Common Benefits Clause of the Vermont Constitution.* All of MVCS's constitutional arguments are based on its claim that the Vermont statute, as applied, distinguishes between religious schools owned or operated by churches and those run independently, and that this distinction is unconstitutional. In making these arguments, MVCS ignores that the ESB decision found two separate grounds for denying MVCS an exemption from making unemployment compensation contributions. MVCS ignores the fact that the ESB also denied MVCS an exemption because it was *not* "operated primarily for religious purposes." Under the ESB's rationale, even if MVCS were "operated, supervised, controlled, or principally supported by a church or convention or association of churches," it still would not be exempt.

¶ 20. MVCS is raising serious questions of state and federal constitutional law, essentially the argument made to the United States Supreme Court in *Grace Brethren* but not reached because of the jurisdictional holding. Ordinarily, we would analyze such issues thoroughly and in depth. In this case, however, MVCS's arguments are extremely sparse, to the point of inadequate briefing, and they do not acknowledge the full holding of the ESB. As a result, we dispose of them summarily.

¶ 21. MVCS relies primarily on one case, *Christian School Ass'n v. Commonwealth*, 423 A.2d 1340, 1347 (Pa. Commw. Ct. 1980), which holds that denying an exemption based on the organizational structure of an entity operated primarily for religious purposes violates the free exercise clause of the First Amendment. The argument is more thoroughly developed in *Salem College*, 695 P.2d at 36-39, which held that such discrimination would violate Article I, Sections 2 and 3 of the Oregon Constitution. The Oregon Supreme Court construed the statute to deny the exemption to all religious schools, however they are organized, and avoided the constitutional deficiency in that way. *Id.* at

---

* MVCS raises no claims under Chapter I, Article 3 of the Vermont Constitution.

40. In effect, the ESB accomplished the same result in this case by holding that MVCS is not operated primarily for religious purposes. In the absence of discrimination based on how a religious school is operated, MVCS has no claim under the First Amendment or under the Common Benefits Clause in Chapter I, Article 7 of the Vermont Constitution. We conclude that the statute neither unconstitutionally burdens the free exercise of religion nor establishes religion. We further hold that the statute does not unconstitutionally discriminate between independent schools such as MVCS, and those supported by a church, convention or association.

*Affirmed.*