2006 VT 51

### Daniel T. QUINN v. Suzanne T. SCHIPPER

[908 A.2d 413]

No. 04-210

¶ 1. June 8, 2006. Plaintiff Daniel Quinn[1] appeals from a Windsor Family Court decision denying his motion to enforce a contractual obligation against his former wife, defendant Suzanne Schipper, to pay certain taxes pursuant to the terms of an addendum to a separation agreement. The separation agreement was incorporated into the divorce

[1] This proceeding is part of long-running post-divorce litigation between the parties. The family court resolved the issues before us under the docket number of the existing case in which Quinn is the defendant and Schipper is the plaintiff. We have reversed these labels because Quinn's motion to enforce put the issue before the court. Thus, he is the plaintiff for the issues on appeal.

judgment, which was issued in Maryland on July 27, 1994, with no reference to the modification provision. The family court determined that the modification provision was not actually a subsequent agreement and could not be enforced against defendant because she was induced to sign it by a fraudulent misrepresentation. We affirm.

¶ 2. The parties were married in 1980 and separated in 1992; both lived in Maryland at the time of separation. They were divorced on July 28, 1994, by decree of the Frederick County Circuit Court in Maryland. Prior to the final divorce decree, they signed an "Agreement of Separation and Property Settlement," which wife signed on February 8, 1994 and husband signed on February 28, 1994, and delivered on March 29, 1994. Paragraph 11 of the agreement provided:

> 11. The parties together own one hundred percent (100%) stock interest in a corporation known as Skyline Engineers of Md., Inc. Wife shall transfer her stock interest to either the corporation or to Husband, at his option, for no consideration. Husband shall indemnify and hold harmless Wife from any liability, including federal and state taxation, as a result of her prior stock ownership or participation in its management.

On March 28, 1994, husband requested, however, that wife sign an addendum to the separation agreement that directly contradicted the agreement by stating that "any sums of money owed ... with reference to Federal and State income taxes, interests and penalties over and above the amount of One Hundred Thousand Dollars ($100,000.00) shall be paid by the Wife and the Wife agrees to hold the Husband harmless and indemnify him for any [such] sums."

¶ 3. Husband did not deliver the original signed agreement to wife until March 29, 1994, after she agreed to sign the tax-liability addendum. The Final Decree of Divorce issued by the Maryland Circuit Court on July 28, 1994, incorporated by reference the separation agreement and an addendum on child custody but did not reference or incorporate the addendum on tax liability.

¶ 4. On January 7, 1999, husband filed an action in the Windsor Superior Court to enforce the addendum to the separation agreement, alleging that under the addendum wife owed him $115,517 plus interest for the tax liability he incurred over $100,000. The superior court dismissed for lack of subject matter jurisdiction, holding that the dispute belonged in the family court. Husband did not appeal that dismissal.

¶ 5. Instead, husband filed a complaint and motion to enforce judgment in the Windsor Family Court, again seeking to enforce the addendum to the separation agreement. In April 2000, the Windsor Family Court granted summary judgment in favor of wife. Applying Maryland law, the family court ruled that the addendum was invalid because it was not presented to the Maryland divorce court. Husband appealed to this Court, and we reversed and remanded for further proceedings. *Schipper v. Quinn*, No. 2000-233, slip op. at 3 (Vt. Jan. 4, 2001) (unreported mem.). We noted that, under Maryland law, where the parties intend a settlement agreement to be incorporated into a divorce decree, but not merged into the decree, "'the agreement remains a separate, enforceable contract and is not superseded by the decree.'" *Id.* at 2 (quoting *Johnston v. Johnston*, 465 A.2d 436, 441 (Md. 1983)). By its terms, the settlement agreement fit this description. Further paraphrasing the law from *Johnston*, we explained:

> If an agreement's validity is established by the court through incorporation, then neither party may evade their obligations under the agreement by claiming it was procured through fraud, misrepresentation or coercion. An agreement incorporated by a decree cannot be thus collaterally attacked. It is enforceable as a valid contract between the parties. In contrast, a merged agreement does not survive the decree . . . .

*Id.* at 2-3 (citations omitted). We held that the separation agreement was a separate enforceable agreement "and that its validity is res judicata as a result of its incorporation in the divorce decree." *Id.* at 3. We further held that the addendum was "a properly executed amendment to a valid contract." *Id.* We reversed the grant of summary judgment for wife but remanded to the family court to address wife's two additional arguments: (1) that she signed the addendum under duress; and (2) that she effectively voided the addendum by not submitting it to the divorce court. *Id.*

¶ 6. On remand, the Windsor Family Court took evidence for two days and concluded that the addendum was invalid because it was induced by fraud and because the separation agreement became effective *after* the purported addendum and thus controlled.[2] Specifically, the court held that husband in-

---

[2] Wife also claimed that the addendum was a product of coercion and duress, but the court did not reach this claim. Husband argues on appeal that the family court should not have considered the fraud claim because it was not identified as available in this Court's remand decision. He failed to object in the family court and has waived this argument.

duced wife to sign the addendum by misrepresenting that it applied only to the corporation's tax liability and liability was unlikely to exceed $100,000. Husband has appealed that decision, making several arguments.

¶ 7. First, husband argues that the family court was without subject matter jurisdiction to hear his claim. He submits that because the family court is a court of limited jurisdiction under 4 V.S.A. § 454, it is without authority to hear a "breach of contract" claim. The family court has exclusive jurisdiction to hear and dispose of divorce proceedings. 4 V.S.A. § 454. Although the agreement and the addendum are separate enforceable contracts, they were "part of the divorce proceedings, and ... within the family court's jurisdiction." *Manosh v. Manosh*, 160 Vt. 634, 634, 648 A.2d 833, 835 (1993) (mem.). The issue presented here is similar to that in *Manosh*. There, the parties had a settlement agreement that the final divorce order referenced, although the parties had not submitted the agreement to the family court for review, and the agreement was not incorporated into the divorce order. We held that the settlement agreement was an independent contract, but that it was part of the divorce proceedings and, as such, the family court had jurisdiction to determine its validity. *Id.* We noted that nothing in the family court's statutory scheme required husband to present the referenced agreement in superior court and, moreover, "[s]uch an interpretation would be unreasonable and a waste of judicial resources." *Id.* Although the addendum was not presented to the Maryland divorce court, it is an agreement intended to settle the divorce proceedings. Thus, the family court has jurisdiction to determine its validity.

¶ 8. Our finding that jurisdiction in the family court was proper is additionally supported by the fact that husband availed himself of the family court's ju-risdiction after the superior court denied his claim, and he never appealed the superior court's dismissal. In these circumstances, husband is bound by the superior court decision even though the issue is one of subject matter jurisdiction. See Restatement (Second) of Judgments § 12 (1982) (indicating a party is foreclosed from litigating subject matter jurisdiction in a subsequent lawsuit unless the decision on jurisdiction was "a manifest abuse of authority," the judgment at issue "would substantially infringe the authority of another tribunal," or the rendering court was incapable of making an adequately informed assessment of its own jurisdiction and procedural fairness would require the party seeking to avoid the judgment to have the opportunity to belatedly attack jurisdiction); see also *Hodge v. Hodge*, 621 F.2d 590, 592 (3d Cir. 1980) (noting the modern trend in subject matter jurisdiction accords substantially great weight to finality, and stating that "even the issue of subject matter jurisdiction must at some point be laid to rest"). None of the exceptions to the general rule foreclosing husband from collaterally attacking the superior court's unappealed determination that it lacked jurisdiction apply in this case.

¶ 9. Next husband argues that the family court violated his constitutional rights. We note at the outset that husband's briefing on this point is erratic, unclear, and ultimately inadequate. See *State v. Taylor*, 145 Vt. 437, 439, 491 A.2d 1034, 1035 (1985) ("In briefing cases brought before this Court, it is the obligation of the parties to present, in a clear and concise manner, those legal and factual issues which they would have us address."). As such, we will address these claims summarily, as we find no constitutional inadequacies. See *Mid Vt. Christian Sch. v. Dep't of Employment & Training*, 2005 VT 100, ¶ 20, 178 Vt. 448, 885 A.2d 1210 (summarily addressing

inadequately briefed constitutional claims).

¶ 10. Most of husband's arguments under this heading involve rulings that occurred in other aspects of these proceedings, at least some of which were disposed of in earlier appeals. *Schipper v. Quinn*, No. 2003-066, slip op. at 2 (Vt. July 18, 2003) (unpublished mem.). In examining husband's constitutional arguments, we find two that appear to relate to the decision on appeal. The first is that the family court denied the Maryland divorce decree full faith and credit by refusing to enforce it pursuant to husband's wishes. See *Taddeo v. Taddeo*, 141 Vt. 120, 124, 446 A.2d 360, 362 (1982) (observing that, under Article IV, § 1 of the United States Constitution, a court of this state must give full faith and credit to the valid judgment of the court of another state). As discussed *infra*, ¶¶ 15-17, one of the main issues in this case is the effect of the Maryland divorce order, although the issue was largely resolved in the earlier appeal decision. *Schipper v. Quinn*, No. 2000-233. The family court applied Maryland law and gave the same effect to the Maryland divorce decree that a Maryland court would give to the decree, a decision we affirm in this order. There was no denial of full faith and credit. See *Taddeo*, 141 Vt. at 124, 446 A.2d at 362 (holding full faith and credit clause requires only that Vermont courts give same effect to judgment of another state as courts of that state would give).

¶ 11. Secondarily, husband seems to suggest that the family court denied him equal protection of the law by requiring him to submit to a deposition by wife's counsel while improperly denying his request to take wife's deposition. We will assume for argument's sake only that the court's discretionary discovery rulings could rise to the level of a constitutional violation. This issue started when wife's lawyer filed a notice to take husband's deposition, accompanied by a memorandum arguing the deposition was available as of right under V.R.F.P. 4(g)(2)(A) because the proceeding involved an issue of "property division." Alternatively, wife argued that "good cause" existed for the court to allow the deposition. See *id.* (court can allow deposition based on "good cause shown"). By written response, husband opposed the deposition, stating: "If, however, the Court decides to allow [wife] discovery, [husband] requests the same opportunity to depose [wife]." The court required husband to appear for the noticed deposition because "[t]he issues at stake are financial in nature" and sufficiently similar to the issues for which depositions are authorized "to justify a finding of good cause." The court never mentioned husband's request for the "same opportunity to depose" wife. Husband never noticed a deposition of wife or followed up on the court's ruling.

¶ 12. To the extent that husband made a motion, it was never denied by the court. The court's rationale for allowing the deposition of husband applied equally to a deposition of wife, and husband should have followed up with a notice of deposition. His failure to do so was a waiver.

¶ 13. Husband also argues that this Court should reverse the trial court's decision because of numerous alleged errors in its findings. The trial court's findings of fact will be upheld unless clearly erroneous. *Adams v. Adams*, 2005 VT 4, ¶ 10, 177 Vt. 448, 869 A.2d 124; V.R.C.P. 52(a)(2). As such, family court findings will stand on review "unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them." *Creed v. Clogston*, 2004 VT 34, ¶ 18, 176 Vt. 436, 852 A.2d 577. We conclude that the find-

ings are each supported by the evidence and uphold them.

¶ 14. Husband's real argument is that because wife admitted in another hearing that she made a false statement in an affidavit all issues of credibility must be resolved against her. That is not our law. The family court has the power and obligation to determine the credibility of witnesses. *Adams*, 2005 VT 4, ¶ 10. The court can believe part of the testimony and reject other parts. The family court was under no obligation to reject wife's testimony with respect to the issues before it.

¶ 15. This brings us to husband's main substantive argument that fraud cannot be raised as a defense because the validity of the agreement as modified was resolved in the divorce judgment and cannot be collaterally attacked. On this point, he relies upon our description of Maryland law in our prior decision, *Schipper v. Quinn*, No. 2000-233, specifically relying on the decision in *Johnston*, 465 A.2d at 441. Husband misinterprets our earlier decision as well as the holding of *Johnston*.

¶ 16. We explained in our previous decision that under Maryland law an agreement *as incorporated* into the divorce order could not be collaterally attacked. See *supra*, ¶ 5. The divorce order, however, incorporated only the basic agreement and an addendum dealing with child custody. The divorce order did not incorporate the addendum dealing with tax liability which husband seeks to enforce in this action because the divorce court was never informed of the existence of this addendum. Thus, the tax-liability addendum is a separate contractual provision from the agreement incorporated into the divorce order, which husband could attempt to enforce in this action. Because the addendum was not incorporated into the divorce decree, its validity is not established by res judi-

cata and can be litigated in defense of the motion to enforce.

¶ 17. This holding was necessarily involved in our earlier decision to allow wife to establish her defense of duress, which is a collateral attack on the addendum provision. An obvious consequence of our prior decision insulating the incorporated agreement from collateral attack is that a separate addendum could be attacked. Under husband's argument, he could fraudulently induce wife to enter into an addendum years later and gain the benefit of his fraud, leaving wife with no power to prevent it or seek review by the court because the agreement is not subject to collateral attack. His argument is not helped by his claim that he was unaware that the addendum was never presented to the divorce court because he was pro se at the time of the decree.

¶ 18. Although husband cites to "egregious errors in conclusions of law" by the family court, nowhere in his brief does he argue the family court's legal analysis and ultimate conclusion that the addendum was invalid because it was fraudulently induced was in error. Thus, we uphold the family court's decision that the addendum was fraudulently induced and invalid. Because of this decision, we do not review the family court's alternative ground for invalidating the addendum — that it preceded the underlying agreement.

*Affirmed.*

Motion for reargument denied July 21, 2006.