2012 COA 23

**Cynthia C. HARBERT, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Evergreen Christian Outreach, Respondents.**

**No. 11CA0835.**

Colorado Court of Appeals,
Div. VII.

Feb. 2, 2012.

---

Cynthia C. Harbert, Pro Se.

No Appearance for Respondents.

Opinion by Judge RICHMAN.

¶1 In this unemployment compensation benefits case, petitioner, Cynthia C. Harbert (claimant), seeks review of a final order of the Industrial Claim Appeals Office (Panel) affirming the hearing officer's decision that claimant was not entitled to benefits because she was not engaged in covered employment when she was terminated. The hearing officer determined, and the Panel agreed, that claimant's employer, Evergreen Christian Outreach (EChO), was an organization operated primarily for religious purposes, and was operated, supervised, controlled, or principally supported by an association of churches pursuant to section 8–70–140(1)(a), C.R.S.2011, thus exempting employer from the Colorado Employment Security Act (Act).

¶2 We conclude that EChO is not exempt under section 8–70–140(1)(a), and thus we set aside the Panel's order and remand.

I. Background

¶3 From March 2007 until October 2010, claimant worked in a resale store operated by EChO. According to its mission statement, EChO was founded by a group of churches in Evergreen, Colorado, "to provide assistance to residents of the Evergreen mountain communities who are unemployed,

under-employed, dealing with a long term illness, or experiencing other forms of personal crisis." EChO implements "its mission by providing, food, clothing and other items that meet the most urgent needs of those it serves," and occasionally providing "shelter, automotive/fuel, childcare, medical/prescription, or other temporary needs." The resale store where claimant worked provides a major source of funding for EChO's outreach programs. Through its programs, EChO "offers opportunities for discipling and mentoring, thereby reaching out to the emotional, intellectual and spiritual needs of Clients."

¶ 4 EChO's facilities are located on the grounds of an Episcopal church in Evergreen, except that the resale store, where claimant worked, is located in a private commercial space in a shopping center in Evergreen.

¶ 5 Claimant separated from her employment with EChO and applied for unemployment benefits. A deputy denied her claim, however, concluding that EChO is a religious organization and that claimant's employment therefore was "not covered." After considering the witnesses' testimony and reviewing EChO's by-laws, policies, volunteer handbook, and brochure, the hearing officer was also persuaded that although the services provided by EChO were "not religious per se," claimant's employment was nevertheless exempt from the Act, because her work was performed for an organization that is operated primarily for religious purposes and is operated, supervised, controlled, or principally supported by an association of churches. § 8–70–140(1)(a). The Panel affirmed and this appeal followed.

## II. Issues on Appeal

¶ 6 Claimant contends that the hearing officer and Panel erred in concluding that EChO is an exempt organization. She argues that EChO is not a "recognized religious body," that the hearing officer confused "the boundaries of the distinction" between EChO's altruistic motivations and true religious function, and that the hearing officer improperly disregarded the testimony of EChO's former executive director who stated that EChO became "less and less of a reli-

giously grounded group." She also maintains that she was never informed that she could be denied unemployment compensation benefits because EChO was not covered by the Act. We agree that the Panel misapplied the law in this case.

## III. Standard of Review

■ ¶ 7 We are bound by the hearing officer's findings of evidentiary facts if they are supported by substantial evidence in the record. *Goodwill Indus. v. Indus. Claim Appeals Office,* 862 P.2d 1042, 1046 (Colo. App.1993) ("If the decision is supported by substantial evidence and the inferences which may be drawn therefrom, the hearing officer's decision will not be disturbed on review by this court.").

■ ¶ 8 However, we are not so bound by the hearing officer's or Panel's determinations of ultimate facts.

Ultimate conclusions of fact ... are conclusions of law or mixed questions of law and fact that are based on evidentiary facts and determine the rights and liabilities of the parties.... [A]n ultimate conclusion of fact is as a general rule phrased in the language of the controlling statute or legal standard.

*Federico v. Brannan Sand & Gravel Co.,* 788 P.2d 1268, 1272 (Colo.1990) (citation omitted).

■ ¶ 9 Thus, while we are bound by the hearing officer's findings of evidentiary facts concerning EChO's activities, we are not bound by the Panel's ultimate conclusion as to whether EChO operates primarily for religious purposes. On appeal, we are free to draw our own conclusions from relevant documents and evidence in the record, and we review de novo the Panel's ultimate legal conclusion. *See Bell v. Indus. Claim Appeals Office,* 93 P.3d 584, 586 (Colo.App. 2004). And we may set aside a decision of the Panel if it is erroneous as a matter of law. § 8–74–107(6)(d), C.R.S.2011.

## IV. Analysis

¶ 10 The Panel based its denial of claimant's request for benefits on section 8–70–140(1)(a), which states that, for purposes of

the Act, "employment" does not include services performed

> [i]n the employ of a church or a convention or association of churches or in the employ of an organization that is operated primarily for religious purposes and that is operated, supervised, controlled, or principally supported by a church or convention or association of churches or in the employ of an elementary or secondary school that is operated primarily for religious purposes.

¶ 11 As the Panel observed, EChO is neither "a church [n]or a convention or association of churches," nor "an elementary or secondary school that is operated primarily for religious purposes." Thus, our analysis focuses on the second of the three types of organizations exempted from coverage by section 8–70–140(1)(a). Under that provision, an organization is exempt if it "is operated primarily for religious purposes *and* ... is operated, supervised, controlled, or principally supported by a church or convention or association of churches." § 8–70–140(1)(a) (emphasis added).

¶ 12 Claimant maintains that EChO is a nonprofit organization whose primary function is to operate "a community food bank and to provide limited or temporary assistance for those in need in the Evergreen community." She argues that although EChO's employees, volunteers, and board members may maintain relationships with its founding churches or other faith-based organizations, EChO's work is primarily secular in nature and should constitute covered employment. In other words, she maintains that EChO does not meet the first prong of the exemption created by section 8–70–140(1)(a) because it is not "operated primarily for religious purposes."

### A. *Samaritan Institute* Test

¶ 13 In *Samaritan Institute v. Prince–Walker*, 883 P.2d 3 (Colo.1994), our supreme court considered when an organization is "operated primarily for religious purposes," and concluded that because the word "operated" connotes activity, "the type of activity actually engaged in, rather than the motivation and impetus for the activity, is dispositive." *Id.* at 7. "An organization that provides essen-

tially secular services falls outside of the scope of section 8–74–140(1)(a)." *Id.* at 8.

¶ 14 In *Samaritan Institute*, the supreme court was asked to determine whether an institute that served as "the national administrative office" for a national network of Samaritan counseling centers, by providing "administrative resources, accreditation, and new center development" to the centers, was exempt from the Act's definition of employer. *Id.* at 5. Although the centers provided counseling within a religious context, the institute itself did not provide counseling services, and its funding was "primarily generated from fees charged to its centers." *Id.* Although the institute was "affiliated with a large number of religious organizations," a referee found that it was "independently incorporated" and "operated as a non-profit corporation which provides [services to the centers] pursuant to a contractual agreement of affiliation." *Id.* at 5–6. Accordingly, the supreme court concluded that the institute was not operated primarily for religious purposes and therefore was not qualified for the exemption created by section 8–70–140(1)(a).

¶ 15 In reaching this conclusion, the supreme court emphasized that "[t]he activities of an organization, and not the motivation behind those activities, determine whether an exemption is warranted." *Samaritan Inst.*, 883 P.2d at 7. To explain this distinction, the supreme court relied on the decision in *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 784, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981), which interpreted 26 U.S.C. § 3309(b)(1), the federal counterpart to section 8–70–140(1)(a).

¶ 16 The United States Supreme Court noted that some activities clearly fall within the scope of the statutory exclusion, while others require an ad hoc determination based upon the specific facts. Thus, the Supreme Court said:

> [T]he services of a janitor of a church would be excluded [i.e., exempted], but services of a janitor for a separately incorporated college, although it may be church related, would be covered. A college devoted primarily to preparing students for the ministry would be exempt, as would a

novitiate or a house of study training candidates to become members of religious orders. On the other hand, a church related (separately incorporated) charitable organization (such as, for example, an orphanage or a home for the aged) would not be considered under this paragraph to be operated primarily for religious purposes. *St. Martin Evangelical Lutheran Church,* 451 U.S. at 781, 101 S.Ct. 2142 (quoting H.R.Rep. No. 91–612, at 44 (1969)).

¶ 17 Thus, *Samaritan Institute* emphasized that "[t]he nature of the activity performed provides assistance in ascertaining whether an organization is 'operated primarily for religious purposes.'" *Samaritan Inst.,* 883 P.2d at 8.

## B. Panel's and Hearing Officer's Rulings

¶ 18 The hearing officer in the instant case concluded that EChO was operated primarily for religious purposes, focusing on several factors, including:

(1) Echo was founded by twenty-one Evergreen, Colorado churches.

(2) Its by-laws stated that its purpose was "to proclaim the saving work of Jesus Christ ... specifically by following His commands to 'feed the hungry, give drink to the thirsty, welcome the stranger, clothe the naked, care for the sick and imprisoned' ... and 'to love one another as He has loved us.'"

(3) The "participating churches" contributed "financial support, volunteers, tangible goods and on-going prayers."

(4) EChO's governing board of directors was composed of church representatives.

(5) EChO paid below-market rent to the Episcopal church at which it is located.

(6) A large image of Jesus and crosses decorated EChO's walls, and Bibles were available on the shelves of its food bank.

(7) Each client was given a "brochure or booklet" which included a Bible verse and a summary of the services EChO provided, and advised clients, "You are recognized by everyone at [EChO] to be a gift, unique, a work of God's hand, and a blessing." The booklets were also available in the resale shop.

(8) Volunteers serving EChO were told of EChO's motto to "[p]reach Jesus at all times, and if necessary use words."

¶ 19 Focusing on the fact that clients visiting EChO must enter church property, are confronted with "religious icons," may obtain a Bible, and are provided with booklets that "first proselytize," the hearing officer concluded that EChO "is operated as a ministry for religious purposes primarily."

¶ 20 Nonetheless, the hearing officer also found that the services EChO provides to its clients "are not religious per se." Moreover, the hearing officer acknowledged that those who shop and work in the resale shop "do have a secular experience except for the booklets which are available there." In addition, the current executive director of EChO testified that the clients are not asked if they belong to a church or what their religious preference is. Regardless of a person's religion, EChO will provide food, clothing or financial assistance. She further testified that there is no proselytizing of the clients; "they're not given a sermon or anything."

## C. Application of *Samaritan Institute* Test

¶ 21 As we review the hearing officer's analysis, we note that it did not evaluate EChO's actual activities. Although the hearing officer noted that EChO's booklets contained proselytizing language, the only *activities* described were EChO's distribution of clothing, shoes, housewares, and food, and its provision of limited funds for basic necessities such as child care, housing, utilities, and gasoline, in addition to its operation of the resale shop. Contrary to the hearing officer's and the Panel's analysis, these activities—not the religious motivation behind them or the organization's founding principles—"determine whether an exemption is warranted." *Samaritan Inst.,* 883 P.2d at 7. As the hearing officer observed, EChO's primary function, the provision of services such as food and clothing, is "not religious per se."

¶ 22 Moreover, like the counseling organization in *Samaritan Institute,* EChO is a separate legal entity from the churches that founded it. While the churches that "operated, supervised, controlled, or principally sup-

ported," § 8–70–140(1)(a), EChO operated primarily as religious organizations, EChO is not incorporated by any one church. It maintains separate finances and does not advocate one Christian religion over another. Although it receives funds from the churches, a substantial part of its finances came from the revenues of the resale shop.

¶ 23 The United States Supreme Court cited to the lack of differentiation between a school and a church in ruling that the school was exempt from unemployment compensation taxes under 26 U.S.C. § 3309(b)(1)(A) (2011). *St. Martin Evangelical Lutheran Church*, 451 U.S. at 784, 101 S.Ct. 2142. There, a church-operated elementary school was "not a separate legal entity from the church, [and was] controlled by a Board of Education elected from the local congregation. The congregation entirely finance[d] the school's operation." *Id.* at 778, 101 S.Ct. 2142. The United States Supreme Court held that because the school had "no separate legal existence from the church," it fell within the exemption for "a church or convention or association of churches" set forth in 26 U.S.C. § 3309(b)(1)(A) and, because it was regarded as a church, its employees were not entitled to unemployment compensation benefits. *Id.* at 784, 101 S.Ct. 2142. The Supreme Court drew a distinction between employees of a "church or convention or association of churches, on the one hand, and employees of 'separately incorporated' organizations, on the other," noting that its holding "concerns only schools that have no legal identity separate from a church." *Id.* at 782 & n. 12, 101 S.Ct. 2142.

■ ¶ 24 In contrast, a separate legal entity that is not operated "primarily for religious purposes" is not subject to the exemption, despite affiliations it may have with religious organizations. Rather, as in *Samaritan Institute*, where courts have found that an organization is an entirely separate legal entity engaging in activities that are not religious per se, they have generally distinguished *St. Martin Evangelical Lutheran Church* and held the exemption from unemployment compensation taxes inapplicable. *See, e.g., Bethania Ass'n v. Jackson*, 262 Ill.App.3d 773, 200 Ill.Dec. 332, 635 N.E.2d 671, 676 (1994) (holding that cemetery owned and operated by association of churches was not entitled to unemployment compensation tax exemption because services it provided "were the same as those of secular cemeteries" and therefore its primary purpose was not religious); *accord Concordia Ass'n v. Ward*, 177 Ill.App.3d 438, 126 Ill.Dec. 726, 532 N.E.2d 411, 414 (1988).

¶ 25 Similarly, the Arkansas Supreme Court denied exempt status to a hospital operated by the Catholic church, holding that although the hospital's "sole *motivation* may be religious in nature," because it is "*operated* primarily for the purpose of providing health care," it did not operate primarily for a religious purpose and did not fall within the exemption. *Terwilliger v. St. Vincent Infirmary Med. Ctr.*, 304 Ark. 626, 804 S.W.2d 696, 699 (1991) (emphasis in original). Parochial schools operated independently of churches may also be subject to unemployment compensation taxes if they are unable to demonstrate that their primary purpose is religious in nature. *See Mid Vermont Christian Sch. v. Dep't of Emp't & Training*, 178 Vt. 448, 885 A.2d 1210, 1212–13 (2005) (school not operated primarily for religious purposes; "although the school's Bible instruction, inculcation of Christian values and glorification of God were integral parts of the educational mission, the primary purpose is to provide a thorough education, combining traditional and modern subjects"); *Baltimore Lutheran High Sch. Ass'n v. Emp't Sec. Admin.*, 302 Md. 649, 490 A.2d 701, 709 (1985) (finding no error in board's determination that school was not operated primarily for religious purposes);; *but see Cmty. Lutheran Sch. v. Iowa Dep't of Job Serv.*, 326 N.W.2d 286, 291–92 (Iowa 1982) (holding that separately incorporated parochial school which was created to "to rear children in the Christian faith 'in all their schooling,' " was exempt because it operated primarily for religious purposes).

¶ 26 Most analogous to EChO is a charitable organization that the Illinois Appellate Court evaluated to determine its primary purpose. There, the Illinois court analyzed whether a center founded and operated by the Episcopal church "to provide counseling,

casework and supportive services, and scholarship aid for American Indians, primarily those resident in Chicago," operated primarily for religious purposes. *St. Augustine's Ctr. for Am. Indians, Inc. v. Dep't of Labor,* 114 Ill.App.3d 621, 70 Ill.Dec. 372, 449 N.E.2d 246, 246 (1983). Like EChO, the St. Augustine Center was a separate legal entity with a board of directors populated by members of the supporting church. *See id.* The Illinois court held that the center was not exempt from unemployment compensation taxation:

> While the record in the instant case indicates that plaintiff offers religious services, we agree with the conclusion that the "primary" purpose of the Center is to offer social services and the religious purpose is only secondary. As one court noted, the use of the word "primarily" necessarily contemplates an additional attribute and means "of first importance" as opposed to "secondarily."

... The fact that religious services and guidance are provided by the plaintiff does not preclude a determination that the Center's primary goal is to provide secular assistance to American Indians in the Chicago area. *Id.,* 70 Ill.Dec. 372, 449 N.E.2d at 249 (citation and footnote omitted).

¶ 27 Likewise here, the primary purpose or primary activity carried out by EChO is the provision of assistance services to those in need, regardless of their religious affiliation or beliefs. Although EChO does not hide its religious *motivation* for carrying out its charitable work—on the contrary, its religious leanings are publicized in its literature, location, and displayed iconography—it is *operated* primarily to perform charitable work to disadvantaged individuals residing in Evergreen. *See Terwilliger,* 804 S.W.2d at 699. Such work, while often tied to religious organizations, is no different from the charitable work performed by countless secular entities.

¶ 28 In reaching its determination that EChO "operated primarily for religious purposes," the Panel relied solely on its and the hearing officer's observation that "the services provided by EChO were provided as EChO's ministry." The Panel's and the hearing officer's analysis thus focused on EChO's religious motivation while disregarding its actual activities. Consequently, the Panel and the hearing officer did not follow the appropriate analysis to determine whether EChO operated primarily for religious purposes. *See Samaritan Inst.,* 883 P.2d at 7–8.

¶ 29 Because EChO's work and activities are secular in nature, despite its religious motivations for carrying out its work that form its secondary purpose, we cannot say that its *primary* purpose is religious. We therefore conclude that the Panel misapplied the law when it affirmed the hearing officer's determination that EChO was exempt from the Act under section 8–70–140(1)(a), and we hold that EChO is not exempt under that statute. *See* § 8–74–107(6)(d); *Bell,* 93 P.3d at 587

### V. Entitlement to and Eligibility for Benefits

¶ 30 We note that both the Panel's and hearing officer's decisions focused exclusively on whether EChO was an exempt organization under the statute, and neither addressed whether claimant was otherwise eligible for unemployment benefits or entitled to them. Consequently, we do not reach these issues here.

### VI. Conclusion

¶ 31 The order is set aside and the case remanded for further proceedings in accordance with the views of this opinion.

Judge ROMÁN and Judge MILLER concur.