24CA0924 Brito-Chavez v ICAO 09-05-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0924
Industrial Claim Appeals Office of the State of Colorado
DD No. 5724-2024

---

Antonio Brito-Chavez,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Mountain States
Asphalt Paving Inc,

Respondents.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE LUM
Freyre and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 5, 2024

---

Antonio Brito-Chavez, Pro Se

No Appearance for Industrial Claim Appeals Office of the State of Colorado

Dar Thompson, Authorized Representative, Commerce City, Colorado, for
Mountain States Asphalt Paving Inc

¶ 1      In this unemployment benefits case, Antonio Brito-Chavez seeks review of a final order of the Industrial Claim Appeals Office (the Panel) affirming a hearing officer's decision disqualifying him from receiving unemployment benefits after finding that he quit his employment with Mountain States Asphalt Paving, Inc. (Mountain States). We affirm.

## I.     Background

¶ 2      Mountain States employed Brito-Chavez as a dump truck driver for approximately six months. After he was late to work multiple times and then was a no-call, no-show, he showed up to work, argued with his supervisor, and then walked off the premises. Brito-Chavez filed for unemployment benefits, which were initially granted. Mountain States contested the award of benefits and applied for a hearing.

¶ 3      Brito-Chavez received notice of the hearing but did not appear. His supervisor, Dar Thompson, testified at the hearing that, after a no-call, no-show on December 6, 2023, Brito-Chavez showed up the next day at the worksite, argued with him, and then threatened to physically fight him. Thompson testified that he is seventy years old and Brito-Chavez is half his age. Thompson testified that, while

1

"it almost came to fisticuffs," Brito-Chavez eventually cursed and walked away. Thompson concluded that Brito-Chavez "got real mad and he quit."

¶ 4 The hearing officer issued a decision on March 26, 2024, concluding that Brito-Chavez resigned due to dissatisfaction with his supervisor, disqualifying him from benefits under section 8-73-108(5)(e)(II), C.R.S. 2024 (quitting employment because of dissatisfaction with supervision not shown to be other than that reasonably to be expected in the proper performance of work). The hearing officer reversed the deputy's initial award of benefits.

¶ 5 Brito-Chavez appealed the hearing officer's decision to the Panel, asserting that he had missed the hearing due to a family emergency. The Panel emailed him questions, asking why he failed to check in for the hearing in advance and inquiring in more detail about the timing of the family emergency. Brito-Chavez did not respond to the emails, and the Panel determined that he had not shown good cause for missing the hearing. The Panel concluded that a new hearing would not be scheduled, but the appeal would proceed.

¶ 6    Brito-Chavez then filed a brief that included over 100 pages of photos and documents, generally asserting that there were problems with the dump truck. Mountain States filed a response brief, noting that the truck was relatively new and under warranty, and that any alleged problems were not relevant to the issue of whether Brito-Chavez was entitled to unemployment benefits.

¶ 7    The Panel issued an order on May 6, 2024, affirming the hearing officer's decision that Brito-Chavez was disqualified from benefits under section 8-73-108(5)(e)(II). The Panel determined that substantial evidence supported the hearing officer's findings that Brito-Chavez quit after Mountain States suspended him for his no-call, no-show. The Panel found that the hearing officer properly credited Thompson's testimony that he gave Brito-Chavez several warnings about tardiness because he was late more than once a week, sometimes for more than an hour. The Panel affirmed the hearing officer's conclusions that Brito-Chavez quit due to reasonable supervision.

¶ 8    The Panel also determined that the "numerous pages of handwritten statements, copies of photos, photos, text messages, and other documents" submitted on appeal would not be

considered because they were not presented at the hearing. § 8-74-104(2), C.R.S. 2024 (the Panel's review is restricted to the evidence in the record before the hearing officer).

## II.     Discussion

¶ 9     Proceeding pro se on appeal, Brito-Chavez generally argues that the condition of his dump truck was unsafe, that he was late to work due to his son's health condition, that Thompson addressed him in an unprofessional manner, and that he did not quit his employment. For the following reasons, we reject these contentions.

### A.     Legal Principles and Standard of Review

¶ 10    We will uphold the Panel's decision unless the findings of fact do not support the decision or the decision is erroneous as a matter of law. § 8-74-107(6)(c)-(d), C.R.S. 2024. We review de novo ultimate conclusions of fact and ultimate legal conclusions. *Harbert v. Indus. Claim Appeals Off.*, 2012 COA 23, ¶¶ 8-9.

¶ 11    A claimant's entitlement to benefits is determined by the reason for the separation from employment, which is a matter to be resolved by the trier of fact. *Eckart v. Indus. Claim Appeals Off.*, 775 P.2d 97, 99 (Colo. App. 1989). The trier of fact must evaluate

the totality of the evidence and determine the motivating factors in the employee's separation. *Id.*

¶ 12 The disqualifying provisions of section 8-73-108(5)(e) "must be read in light of the express legislative intent set forth in [section 8-73-108(1)(a)] to provide benefits to those who become unemployed through 'no fault' of their own." *Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617, 618 (Colo. App. 1998).

## B. Analysis

¶ 13 Brito-Chavez alleged in his initial application for unemployment benefits that he was discharged for refusing to drive an unsafe truck. His employer disputed that contention, however, and requested a hearing. After Brito-Chavez received notice of the hearing, he failed to appear. The notice stated that in the case of a nonappearance, "[i]f you are not the appealing party, the hearing will proceed without you."

¶ 14 Because Brito-Chavez didn't submit documents for the hearing, the hearing officer was limited to the evidence in the record, which contained his initial unemployment application in which he alleged the unsafe driving conditions. At the hearing, however, Thompson testified that the truck was relatively new,

under warranty, and that Brito-Chavez did not know how to take care of it, "nor did he want to learn." The hearing officer accepted that testimony. While Brito-Chavez then submitted over 100 pages of documents to the Panel, the Panel correctly determined it could not consider that evidence because it had not been presented to the hearing officer. *See* § 8-74-104(2).

¶ 15 In Brito-Chavez's appeal, he states, as he did before the Panel, that his aunt's heart transplant caused him to forget to submit his paperwork or register for the hearing. But when the Panel asked him further questions about the times and dates of his aunt's surgery, he did not respond. The Panel therefore held that he had not shown good cause for missing the hearing. And his failure to submit documents for the hearing meant that the hearing officer did not have them, which in turn meant the Panel could not consider them under section 8-74-104(2). Though we sympathize with Brito-Chavez's situation, we discern no error in this determination.

¶ 16 In this unemployment benefits proceeding, the ultimate determination is whether Brito-Chavez was unemployed through no fault of his own. *See Cole*, 964 P.2d at 618. In the unemployment

compensation context, "fault" is not necessarily related to culpability, but only requires a volitional act or exercise of some control or choice in circumstances leading to discharge from employment such that a claimant can be said to be responsible for termination. *Richards v. Winter Park Recreational Ass'n*, 919 P.2d 933, 934 (Colo. App. 1996). Acting with volition generally means having the power or ability to choose and decide or to exercise some control over the circumstances, as opposed to acting in a manner that is "essentially involuntary" or "accidental." *Starr v. Indus. Claim Appeals Off.*, 224 P.3d 1056, 1065 (Colo. App. 2009).

¶ 17     As the Panel recognized, the evidence may have been subject to various inferences concerning the reason or reasons for Brito-Chavez's separation from employment. However, the hearing officer weighed the available evidence and testimony and found the employer's testimony credible. We, like the Panel, may not reweigh the evidence presented or disturb the hearing officer's credibility determinations. *Hoskins v. Indus. Claim Appeals Off.*, 2014 COA 47, ¶ 10.

¶ 18     Brito-Chavez also argues that he was late to work due to his son's health condition and that Thompson treated him

7

unprofessionally. However, this evidence, like Brito-Chavez's documentation, wasn't before the hearing officer, so the Panel couldn't consider it, and neither can we. *See* § 8-74-107(6) (setting forth limited grounds on which we may overturn the Panel's decision).

¶ 19     Given the record evidence of Brito-Chavez's attendance, tardiness, and lack of communication, we discern no error in the hearing officer's conclusions that it was reasonable for Thompson (1) to feel disrespected due to the no-call, no-show; (2) to suspend Brito-Chavez for one day due to his "poor pattern of attendance" and lack of communication; and (3) to assume Brito-Chavez had quit when he walked out after threatening a physical fight. Thus, we also discern no error with the hearing officer's or the Panel's conclusion that Thompson's supervision was objectively reasonable and would not cause a reasonable person to quit. *See Cole,* 964 P.2d at 619 (holding that worker with poor attendance record who abruptly quit after a confrontation with her supervisor was responsible for her job separation).

¶ 20     For these reasons, we conclude that the hearing officer and the Panel correctly determined that the proximate cause of the job

separation was Brito-Chavez's choice to quit his job and that he is disqualified from receiving unemployment benefits under section 8-73-108(5)(e)(II).

## III.    Disposition

¶ 21    The Panel's order is affirmed.

JUDGE FREYRE and JUDGE GROVE concur.