NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 16

No. 23-AP-350

| | |
|---|---|
| Danielle Lacroix | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Family Division |
| | |
| Peter Rysz | April Term, 2024 |

Katherine A. Hayes, J. (motion to set aside prenuptial agreement);
Michael R. Kainen, J. (final order)

Sharon L. Annis of Annis & Goddard, PLC, Brattleboro, for Plaintiff-Appellee.

Barney L. Brannen of Brannen & Loftus, PLLC, Hanover, New Hampshire, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1. **REIBER, C.J.** Husband Peter Rysz appeals from a final divorce order granting wife Danielle Lacroix's motion to set aside the prenuptial agreement with husband and instead allocating an equitable division of property pursuant to 15 V.S.A. § 751. The family division concluded that the agreement was unconscionable because it would "essentially vitiate the very status of marriage" by barring wife from "any significant property settlement or spousal maintenance whatsoever." Husband argues that the court erred in applying a standard of unconscionability that is contrary to this Court's established precedent. He also contends that even if the agreement was unenforceable, the court committed reversible error in the subsequent property settlement proceedings by quashing subpoenas for wife's father and sister and incorrectly calculating the length of the parties' marriage. We do not reach the issues regarding the equitable distribution of property because we reverse the trial court's decision regarding unconscionability

and remand for the trial court to assess wife's alternate arguments regarding the agreement—that husband failed to comply with his obligations and constructively forced her to file for divorce.

## I. Background

¶ 2.    The family division found the following.  The parties met in 2011, when husband was thirty-six years old and wife was twenty-one years old.  The parties moved in together to a home owned by husband in the fall of 2012.  In September 2014, wife gave birth to their only child.  During wife's pregnancy, the parties decided they would get married, settling on a wedding date of June 20, 2015.  Following the birth of the child, wife took on primary responsibility for childcare and housekeeping.  Wife also continued to work full-time as a bookkeeper for her parents' oil-change and car-repair business, earning approximately $35,000 per year, while husband owned and managed property, earning approximately $85,000 per year.  Wife did not dispute that her parents owned substantial property that she might someday inherit, but the court noted that "[s]he has no vested interests of that kind at this time, as far as she knows."[1]

¶ 3.    In the months leading up to the June wedding, husband began preparing a prenuptial agreement in consultation with his personal attorney.  The family division noted that the parties offered "very different recollections about when this topic was first raised," and the court was "unable to determine which of the parties' recollections as to the timing is accurate."  Husband provided wife a copy of the proposed prenuptial agreement sometime around the first week of June, around two weeks before the wedding. Wife obtained independent counsel, the parties made a full disclosure of their assets and income and engaged in active negotiations as to the terms of the agreement.  With their wedding rapidly approaching, both parties understood that husband would not marry wife without a signed prenuptial agreement.  Ultimately, against the advice of her attorney, wife signed the agreement one day before the wedding.

---

[1] The family division determined that husband "believed" that wife "was the beneficiary of significant family trusts and would likely inherit large sums from her parents," but all findings related to wife's potential inheritance were speculative.

¶ 4.    The agreement provided the following.  First, each party disclaimed any "right to the other party's" separate property, as well as "any other marital rights either may have, in law or equity" outside of the agreement itself.  The agreement designated the following as separate property, subject exclusively to the owning party's individual use: (1) all interests in property acquired before marriage, (2) all future property acquired by gift, bequest, or inheritance, (3) all property acquired in exchange for income derived from separate property, (4) all interests in any future property acquired in an individual capacity, and (5) all earnings and income, including through personal services, skills, efforts, work, and investment.  While the agreement did not prohibit the acquisition of joint property, it provided that this would only occur where both parties explicitly agreed to it.  The agreement also provided that in the event of divorce, neither party could seek or be awarded "any form of alimony, maintenance or support from the other, or seek any relief."  At wife's request, a provision was added directing that in the event of a divorce initiated by husband, he would be obligated to provide wife with a mortgage-free home "for her residence that is at least comparable to the size and value of the marital home."  However, if wife filed for divorce, she "waive[d] any rights to such alimony, maintenance[,] or support."  The agreement specified that these provisions would control regardless of the "fault of either party."

¶ 5.    In June 2019, wife left the marital residence and filed for a relief from abuse order.[2] In September 2019, wife filed for divorce, and in July 2020, she moved to set aside the prenuptial agreement as unenforceable.  In the latter motion, wife argued that the agreement was unenforceable both because the substantive terms were unfair and because the agreement as a whole was unconscionable.  Wife alternatively argued that even if the agreement was enforceable, the court should require husband to honor the mortgage-free home provision because his combative and insulting behavior toward her constructively forced her to initiate the divorce filing.

_____

[2]  We take judicial notice of the fact that a final order was entered based on the parties' agreement to an order without findings.  See Lacroix v. Rysz, No. 104-6-19 Wmfa (Vt. Super Ct. June 26, 2019).

3

In her motion, wife additionally represented that she had "been forced to seek a new relief from abuse order based on [husband's] threatening and frightening behavior to her at a drop-off of their son."

¶ 6. Following a hearing, the court found that both parties received "adequate disclosure and information" of financial assets and entered the agreement voluntarily, noting that wife had "advice from counsel," made "a thoughtful choice," and freely entered the agreement. The court found that wife was not under duress and acted voluntarily, choosing to give up legal rights in return for husband's agreement to marry her. The court found that there was "insufficient evidence to show that [husband] took unfair advantage of his relationship with [wife] in insisting that she sign a prenuptial agreement that protected his assets and income." The court determined that enforcing the agreement would not be unconscionable because there was no evidence of fraud or unconscionable advantage taken at the time of execution and, at the time of the parties' divorce, wife was fully "employed and self-supporting" and would not be rendered a "public charge" because of the agreement. The family division's order, however, misconstrued the bargained-for provision regarding the free house for wife, interpreting it to mean that wife received a house regardless of which party initiated the divorce. The court concluded that despite "the enormous disparity between the parties' separate property interests, and the significant disparity in their incomes," the requirement that husband provide wife with a mortgage-free home meant that "the agreement [was] not unconscionable on its terms."

¶ 7. Husband then moved to clarify the court's reading of the mortgage-free-home provision, arguing that the provision had not been triggered because the divorce was not "initiated by [husband]." In response, the court revised its decision, concluding that a correct reading of the provision rendered the entire agreement unenforceable. Citing a Massachusetts case, the court held the agreement was unconscionable because it left the parties in "exactly the situation they would be in if they had not married," thereby "vitiat[ing] the very status of marriage." Austin v. Austin, 839 N.E.2d 837, 842 (Mass. 2005).

4

¶ 8.    At the same time the court was considering wife's motion to set aside the prenuptial agreement, husband sought to subpoena wife's father, mother, and sister, requesting documents related to trusts and other accounts he believed were being held for the benefit of wife.  Wife moved to quash the subpoenas and appended affidavits from her father, mother, and sister stating that they had no knowledge of any information or documents responsive to the subpoenas.  The court granted the motion to quash, concluding that the affidavits made clear that wife's father, mother, and sister "do not have any information and deny the existence of any assets or interests that fall within the" statutory exception to the prohibition on subpoenas of nonparties for personal financial and estate-planning documents.  See 15 V.S.A. § 751(b)(8)(C).

¶ 9.    Finally, the family division engaged in an equitable distribution of the parties' property pursuant to 15 V.S.A. § 751.  As part of its analysis of the statutory factors under § 751(b), the court stated that "[t]he parties have been married for 8 years, and separated in June of 2019." The court found that wife had contributed extensively to the prosperity of husband's real-estate business throughout the marriage, both by providing various types of uncompensated assistance to the business and by providing housekeeping and childcare work that "enabled [husband] to work on properties undistracted."  Accordingly, the court granted wife ownership of one of husband's properties, which wife valued at $300,000, as well as a $75,000 cash payment and $50,000 in legal fees.  Husband appealed the final order to this Court.

## II.  Discussion

¶ 10.    Husband challenges the family division's order on three bases.  First, he asserts that the court erred in declaring the prenuptial agreement unenforceable.  He argues that the court impermissibly expanded our case law on invalidating prenuptial agreements by relying on an inapposite out-of-state case, and he suggests that applying the court's standard for unconscionability would jeopardize all prenuptial agreements.  Second, even assuming the agreement was unenforceable, he argues that the court erred in granting the motion to quash the subpoenas of wife's father and sister.  Finally, husband argues that the court committed clear error

5

in its factual finding that the parties' marriage lasted eight years. We conclude that the family division applied the wrong standard for assessing unconscionability and therefore reverse that decision. We do not reach husband's arguments regarding the division of property, however, because we remand for the family division to consider wife's alternative arguments regarding the enforceability of some or all of the agreement.

### A. Conscionability of the Prenuptial Agreement

¶ 11.    Our review of the family division's findings is deferential. "[W]e will uphold the family court's findings of fact unless, taking the evidence in the light most favorable to the prevailing party and excluding the effect of modifying evidence, there is no credible evidence in the record to support them." Kasser v. Kasser, 2006 VT 2, ¶ 16, 179 Vt. 259, 895 A.2d 134. Additionally, "our review is confined to the record and evidence adduced at trial. On appeal, we cannot consider facts not in the record." Hoover v. Hoover, 171 Vt. 256, 258, 764 A.2d 1192, 1193 (2000).

¶ 12.    In Bassler v. Bassler, 156 Vt. 353, 593 A.2d 82 (1991), this Court discussed the grounds for setting aside a prenuptial agreement.[3]  Under Bassler, a prenuptial agreement is enforceable if (1) "each spouse has made fair and reasonable disclosure to the other of [the spouse's] financial status," (2) "each spouse has entered into the agreement voluntarily and freely," (3) "the substantive provisions of the agreement dividing the property upon divorce are fair to each spouse," and (4) the agreement is not "unconscionable." Id. at 361, 593 A.2d at 87 (quotations omitted); see Rock v. Rock, 2023 VT 42, ¶ 22, 218 Vt. 292, 308 A.3d 492 (providing that prenuptial agreements are binding if "each spouse has made a fair disclosure of finances, each

_____

[3]  Although Bassler did not expressly distinguish between fairness and conscionability, a careful reading of Bassler indicates that these are separate requirements and other authorities treat them as distinct concepts. See, e.g., 5 Williston on Contracts § 11:8 (4th ed. 2024) (recognizing that most jurisdictions require combination of four factors for prenuptial agreements to be enforceable: (1) fair disclosure of finances, (2) free and voluntary consent to enter into agreement, (3) fairness, and (4) lack of unconscionability).

spouse enters into the agreement voluntarily, and the substantive provisions of the agreement are fair to each spouse"); 5 Williston on Contracts § 11:8 (4th ed. 2024) (explaining that to be enforceable, "parties must fairly disclose their respective financial status and other material information," agreement must be voluntary, division of property "must not be unfair," and terms "of the agreement may not otherwise be unconscionable at the time it is entered into").

¶ 13.    In assessing conscionability, we are also mindful that prenuptial agreements are interpreted according to the usual rules for contract interpretation.  Gamache v. Smurro, 2006 VT 67, ¶ 7, 180 Vt. 113, 904 A.2d 91.  In general, "whether a contract is unconscionable may turn on substantive fairness of terms or factors relevant to formation of a contract."[4]  Falcao v. Richardson, 2024 VT 78, ¶ 16, __ Vt. __, 329 A.3d 208 (alterations omitted).  Unconscionability is measured based on the circumstances at the time the agreement is entered.  Bassler, 156 Vt. at 361, 593 A.2d at 87.  (emphasis added).  See id. ("Public policy bars enforcement of an antenuptial agreement that is unconscionable at the time it is executed." (emphasis added)); Padova v. Padova, 123 Vt. 125, 129, 183 A.2d 227, 230 (1962) (explaining that parties are bound by contract "[i]n the absence of evidence of fraud or unconscionable advantage taken at the time of execution" (emphasis added)); see also Maglin v. Tschannerl, 174 Vt. 39, 45, 800 A.2d 486, 490 (2002) (focusing on circumstances at time contract is entered to determine unconscionability).

¶ 14.    The family division concluded the agreement was unconscionable because it vitiated the status of marriage by barring wife from recovering any significant property award or obtaining spousal maintenance.[5]  This conclusion misapplies the conscionability test articulated in

---

[4]  In Bassler, the Court determined a prenuptial agreement was against public policy because at the time of divorce the wife was receiving public assistance and the husband "had sufficient means to meet his desires and needs."  156 Vt. at 362, 593 A.2d at 88.  There is no assertion here that the prenuptial agreement left wife a "a public charge, or close to it."  Id. at 361, 593 A.2d at 87.

[5]  The parties agree that the first two factors were satisfied.  Both parties disclosed their financial situation and entered the agreement voluntarily and without duress.

Bassler.[6]  By allowing the parties to contractually agree to remain in the same financial situation as prior to marriage, this agreement was in keeping with a major purpose behind prenuptial agreements: to preserve and protect the parties' income and assets upon divorce.  See 5 Williston on Contracts, supra, § 11:8 (indicating one purpose of prenuptial agreement is to protect parties' assets).  Even in matters of family law, "[w]e have long recognized the importance of freedom of contract."  Theberge v. Theberge, 2020 VT 13, ¶ 19, 211 Vt. 535, 228 A.3d 998.  It is at odds with this principal of contract law to conclude that future spouses may not enter a prenuptial agreement that leaves them in the same financial situation as prior to the marriage.  Indeed, as long as the agreement does not leave either party a public charge, we have previously enforced prenuptial agreements that provided each spouse with the property that the spouse held prior to marriage.  See Stalb v. Stalb, 168 Vt. 235, 243, 719 A.2d 421, 427 (1998) (concluding prenuptial agreement was valid where parties retained their own property and wife was not public charge but left with "standard of living far below that realized during the marriage").

¶ 15.  The trial court's conclusion that the agreement was unconscionable primarily centered on wife's entitlement to a mortgage-free house if husband filed for divorce.  When the court misunderstood the free-house provision, the court found the agreement was not unconscionable.  It was only when the court correctly understood the provision that the court found the balance tipped from conscionable to unconscionable.  There is nothing inherently unconscionable about a prenuptial contract that distributes assets differently depending on which spouse files for divorce.  See Penhallow v. Penhallow, 649 A.2d 1016, 1018 (R.I. 1994) (upholding agreement under which wife was entitled to fifty percent of certain real estate only if husband filed for divorce); Ford v. Blue, 106 S.W.3d 470, 473 (Ky. Ct. App. 2003) (approving term that wife's

---

[6]  The trial court's legal analysis was also flawed because it relied on Massachusetts law, which uses a "fair and reasonable" standard for evaluating conscionability of prenuptial agreements, and is different than the standard established in Vermont.  See DeMatteo v. DeMatteo, 762 N.E.2d 797, 809 (Mass. 2002) (explaining that Massachusetts requires that agreements be "fair and reasonable" and recognizing that this is not same as test for unconscionability, which requires "greater showing of inappropriateness" (quotations omitted)).

share would increase by fifty percent if husband filed divorce). Therefore, the family division erred in nullifying the agreement on this basis.

¶ 16. However, that conclusion does not ultimately answer the question of whether the entire agreement is enforceable. Wife's motion to set aside the prenuptial agreement was based on two general theories. First, wife asserted that the agreement was invalid because the terms and circumstances surrounding formation were unconscionable. Second, wife claimed that husband breached the expectations in the agreement by getting a vasectomy, failing to pay his share of the household expenses or maintain the marital home as required, and becoming verbally and physically violent towards her. Related to this second ground, wife asserted that husband's abuse constructively forced her to file for divorce and therefore the court should nullify the provision of the agreement allowing a mortgage-free house only if husband initiated the divorce. Wife attempted to introduce evidence at the November 18, 2020 hearing to support an argument that husband "constructively forced" wife to file for divorce, but husband objected and the family division concluded that it would consider that issue only after resolving whether the entire agreement was valid. As such, the Court did not take any evidence on this matter or make any findings on the merit of wife's allegations.

¶ 17. We therefore remand to the family division to assess wife's arguments that husband breached the expectations in the agreement and thus constructively forced her to file for divorce.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Chief Justice

9