NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 68

No. 25-AP-042

| | |
|---|---|
| Christopher Gade | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Erin Gade | October Term, 2025 |

Megan J. Shafritz, J.

Jacob Oblak of Henchen & Oblak, LLP, Waterbury, for Plaintiff-Appellant.

Rory N. Butler of Lynn, Lynn, Blackman & Toohey, P.C., Burlington, for Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Corbett, Supr. J.,
Specially Assigned


¶ 1.     **EATON, J.**     This appeal involves the enforcement of a premarital agreement entered by husband, Christopher Gade, and wife, Erin Gade, that designated their assets as separate property and required husband to pay wife for the increased value of the martial home upon divorce. Although both parties sought to enforce the agreement, husband asked the family division to offset wife's share of the marital home's appreciation by the damage she allegedly inflicted on the home and to address alleged breaches of the premarital contract. The family division granted wife's motion to enforce the agreement and did not consider the merits of husband's arguments, concluding that it did not have jurisdiction over any assets it could award husband in the event that it found a breach. We conclude that in the context of the divorce proceeding, the family division

had jurisdiction over the parties' property and the premarital agreement and thus authority to adjudicate husband's claims regarding breach of that agreement. We therefore reverse and remand.

¶ 2.     The following facts are undisputed unless otherwise noted. Prior to the parties' marriage in 2018, they entered into a premarital agreement, which provided a comprehensive division of their assets in the event of divorce. Under the agreement, each party's assets and anticipated inheritances were categorized as separate property to be retained "free from any claim by the other Party" should the parties divorce. The agreement was structured such that no property owned by either party was joint marital property except the marital home.

¶ 3.     Husband owned the marital home prior to the marriage. The agreement provided that, in the event of a divorce, wife was "entitled to FIFTY (50%) PERCENT of the increase in the appraised value" paid by husband "in monthly installments amortized over thirty (30) years with a balloon payment at the end of five (5) years from the date of the first payment." The agreement required husband to begin payments the month after the home appraisal was completed.

¶ 4.     Relevant to the issues on appeal, the agreement also required the parties to contribute to the living expenses in proportion to their incomes, and provided that if the parties filed joint tax returns, they each would be responsible for paying all taxes associated with the income from their separate property and earned income. Finally, the agreement stated that if either husband or wife breached any provision in the premarital agreement, the breaching party was responsible for any reasonable legal fees incurred by the other party in seeking to enforce the agreement.

¶ 5.     Husband and wife separated in October 2021, and husband filed a complaint for divorce in February 2023. Extensive motion practice concerning enforcement of the premarital agreement followed. Initially, husband asked for "relief" pursuant to the agreement, and wife also

2

moved to enforce it. Wife also asserted, however, that the marital home "is outside of the family [c]ourt's jurisdiction" because it had been designated as separate property in the agreement.

¶ 6. In response, husband agreed that husband and wife should "receive their Separate Property at the time of a divorce" pursuant to the agreement. However, husband alleged that wife had severely damaged the marital home following its appraisal and that this complicated the division of assets. Husband further asserted that wife had not met her obligations to assist in paying for household expenses during the marriage.

¶ 7. Following unsuccessful mediation, wife renewed her motion to enforce the premarital agreement in August 2023 and added a claim for attorney's fees. Supporting her request, wife asserted husband failed to pay her the required monthly installments for the increase in the home's equity.

¶ 8. Husband responded, requesting a final hearing on both the issue of the damage to the home and the motion to enforce. Husband argued that the amount husband owed to wife for the equity in the marital home should be offset by the amount wife owed to husband for the damage she caused to the home.

¶ 9. Following a status hearing and further motion practice, the family division granted wife's motion to enforce. The court noted that the agreement "precludes the Court from even considering separate property in dividing whatever portion of the marital estate is within its jurisdiction" and made no mention of recouping unpaid household expenses or accounting for depreciation in the value of separate property caused by the other party in the event of divorce. Thus, the family division concluded that husband could not seek satisfaction of his claims under the agreement because the family division is a court of limited jurisdiction with authority to allocate the marital estate and no authority to award damages. The court mentioned, however, that it would be possible for husband to pursue his claims against wife for the damage done to the marital home in the civil division, to the extent that his claims were not barred by the agreement.

3

The court also granted wife's request for attorney's fees, determining that husband had failed to make the required payments called for in the agreement.

¶ 10.    Husband filed a motion to reconsider, adding a claim that wife had not met her tax obligations pursuant to the agreement. The court denied husband's motion, once again stating that the family division was limited by its jurisdictional mandate and therefore had "no authority to award damages for breach of contract."[1]  This appeal followed.

¶ 11.    On appeal, husband argues that the trial court erred by enforcing certain premarital agreement terms—namely, the attorney's-fees provision—while also refusing to enforce other provisions—the household-expenses provision, taxes provision, and implied covenant of good faith and fair dealing. Husband argues that the family division came to an erroneous conclusion when it determined that it lacked jurisdiction over his claims. Wife argues that the civil division, not the family division, was the proper forum for husband's claims.

¶ 12.    We conclude that the family division has jurisdiction over husband's claims that wife breached the premarital agreement according to the plain language in 4 V.S.A. § 33(a)(4), which gives the family division jurisdiction over all divorce proceedings—including the premarital agreement and the property allocated therein.

¶ 13.    A challenge to a court's jurisdiction is a legal question that we review de novo. Aither v. Est. of Aither, 2006 VT 111, ¶ 4, 180 Vt. 472, 913 A.2d 376. The jurisdiction of the family division is governed by statute, and "[w]hether the family court properly construed the controlling statutes is a question of law that we review de novo." Heffernan v. Harbeson, 2004 VT 98, ¶ 7, 177 Vt. 239, 861 A.2d 1149. "When the statute's scope and meaning are readily apparent, no construction is necessary, and we apply the statute according to its terms." Id.

_____

[1] The parties engaged in further motion practice, largely reiterating arguments summarized above and disagreeing about whether the family division's decision regarding attorney's fees should be stayed pending appeal to this Court.

4

However, if there is doubt or ambiguity, "we discern legislative intent by considering the statute as a whole, reading integral parts of the statutory scheme together" and, in such cases, "we must look not only at the letter of a statute but also at its reason and spirit to avoid results that are irrational or unreasonable." Id. (quotation omitted).

¶ 14.   The family division has exclusive jurisdiction "to hear and dispose of . . . [a]ll annulment and divorce proceedings." 4 V.S.A. § 33(a)(4). As part of those proceedings, the Legislature has articulated that "[a]ll property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court." 15 V.S.A. § 751(a). It is the family division's role to "settle the rights of the parties to their property by including in its judgment provisions which equitably divide and assign the property" and, in so doing, it may consider several relevant factors. Id. § 751(a), (b). Thus, the family division is a court of limited jurisdiction, but over the matters within its control, that jurisdiction is plenary.

¶ 15.   Regarding premarital agreements specifically, this Court, as with other jurisdictions across the country, has recognized that parties to a marriage may enter into enforceable agreements which reflect their desired disposition of marital property in the event of a divorce. See Stalb v. Stalb, 168 Vt. 235, 241, 719 A.2d 421, 426 (1998) (describing premarital agreements as enforceable contracts); 5 Williston on Contracts § 11:8 (4th ed. 2025) ("[P]remarital agreements, so long as they do not promote divorce or otherwise offend public policy, are generally favored as conducive to the welfare of the parties and the marriage relationship." (emphasis omitted)). When parties enter into such agreements, the family division has jurisdiction over the enforceability and interpretation of those premarital agreements, including claims alleging breaches of the provisions controlling the disposition of property. See Bassler v. Bassler, 156 Vt. 353, 362, 593 A.2d 82, 88 (1991) (holding that premarital agreement at issue "violate[d] public policy and should not be enforced"); Lacroix v. Rysz, 2025 VT 16, ¶ 17, __Vt.__, 336 A.3d 321 (remanding to "family division to assess wife's arguments that husband breached the expectations in the agreement").

5

The family division interprets those premarital agreements "according to rules for construing a contract." Gamache v. Smurro, 2006 VT 67, ¶ 7, 180 Vt. 113, 904 A.2d 91.

¶ 16. Consequently, given the plain language in 4 V.S.A. § 33(a)(4) and 15 V.S.A. § 751(a), divorce proceedings—including premarital agreements and marital property allocated therein—are squarely within the family court's jurisdiction. Cf. Quinn v. Schipper, 2006 VT 51, ¶ 7, 180 Vt. 572, 908 A.2d 413 (mem.) (holding breach-of-contract claim concerning separation agreement was appropriate in family division because agreement and addendum contracts were "part of the divorce proceedings" and therefore "within the family court's jurisdiction" (quotation omitted)); Lussier v. Lussier, 174 Vt. 454, 456, 807 A.2d 374, 378 (2002) (mem.) ("Where the final divorce order incorporates a stipulation agreement between the parties, that agreement becomes part of the divorce proceedings . . . [and] is within the family court's jurisdiction." (quotation omitted)). Indeed, the record here demonstrates that the premarital agreement was integral to the divorce proceedings before the family division: both parties requested that the court allocate the property in accordance with their individual interpretations of the agreement, and the court explicitly stated that the terms of the parties' premarital agreement were incorporated into the final order and decree. Therefore, under the plain language in the controlling statutes, the family division had jurisdiction over husband's claims regarding the premarital agreement.

¶ 17. We have explained that in "the absence of evidence of fraud or unconscionable advantage taken at the time of execution, the parties themselves are bound according to the terms of the contract" and that "[o]ur courts will override their provisions only to enforce duties imposed by law sought to be avoided by contract, or, in particular, to protect the interests of children involved." Padova v. Padova, 123 Vt. 125, 129, 183 A.2d 227, 230 (1962). The general requirement to enforce the terms of a premarital agreement, however, does not affect the court's ultimate jurisdiction over the property allocated in an agreement. See 4 V.S.A. § 33(a)(4) (stating "Family Division shall have exclusive jurisdiction to hear and dispose of . . . [a]ll annulment and

6

divorce proceedings"); 15 V.S.A. § 751(a) (stating "[a]ll property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court"). Contrary to wife's suggestion otherwise, parties cannot "untether[] their separate property from the divorce action" or "narrow[] the Family Division's jurisdiction" by delineating certain property as "separate property" in an agreement. If a premarital agreement is enforceable, it may well be that the court plays little to no role in deciding how property is distributed, but the property is not outside the court's "jurisdiction." Indeed, our precedent demonstrates that in certain cases, it is appropriate for the family division to set aside a premarital agreement between the parties and distribute martial property in a way that deviates from the allocation outlined in the agreement. See, e.g., Bassler, 156 Vt. at 362, 593 A.2d at 88 (refusing to enforce premarital agreement because agreement denied wife any interest in husband's property and wife was receiving public assistance at time of divorce). In such cases, the court must determine whether the agreement as-written or the applicable statutory considerations—which may also incorporate the intent of the parties pursuant to their set-aside agreement—prevail in the property allocation; but its ultimate jurisdiction over the subject matter remains unchanged.

¶ 18. The parties devote substantial portions of their briefs to a disagreement about the applicability of the different reasoning expressed by the two concurrences in Allen v. Allen, 161 Vt. 526, 527-43, 641 A.2d 1332, 1333-42 (1994). In Allen, the Court was divided over whether the family division had jurisdiction over a claim of interest on a loan that the wife made to the husband during their marriage. Id. at 527, 641 A.2d at 1333 (Dooley, J., concurring). Two members of the Court articulated that they would hold that the family division did not have jurisdiction over a debt claim not incorporated into a postnuptial agreement between the parties. Id. at 533-34, 641 A.2d at 1336-37. Those justices supported their conclusion by pointing out that "the family court is a court of limited jurisdiction," and as such, any other type of proceeding like obligations arising out of a separate contract between the parties "may not be brought in that court."

7

Id. at 530, 641 A.2d at 1335. Two other members of the Court explained that the family division should have ancillary jurisdiction over the debt claim as "incidental to [the family division's] primary duty of distributing the marital property." Id. at 537, 641 A.2d at 1338 (Morse, J., concurring).

¶ 19. We need not resolve the question posed in Allen because those facts are distinguishable from the instant case. Unlike in Allen—where the loan agreement and interest at issue had not been formed in anticipation of a divorce and was a separate contract from the parties' postnuptial agreement—the issues brought by husband here concern the parties' premarital agreement.[2] See id. at 527-28, 641 A.2d at 1333-34 (Dooley, J., concurring) (describing loan agreement as separate contract from postnuptial contract between husband and wife). On appeal, husband maintains that he was "asking the Family Division to enforce the terms of the Prenuptial Agreement that Wife had breached, including the covenant of good faith and fair dealing inherent to all contracts." Specifically, in the family division, husband argued that "[p]ursuant to Paragraph 8 of the Agreement, in the event of divorce, the parties are each entitled to retain all of their separate property as defined in the provisions of Paragraph 4" but described that "[t]his is not possible because [wife] essentially took [husband's] separate property by damaging and destroying parts of the house and many items of personal property." Similarly, husband asserted that "[c]ontractually," each party "had a clear obligation to avoid taking, damaging, destroying or

---

[2] In Allen, both concurrences recognized that the family division had jurisdiction over the postnuptial agreement between the parties. See id. at 529, 641 A.2d at 1334 (Dooley, J., concurring) (describing family division interpreting postnuptial agreement but articulating concern that court "went too far" when it extinguished loan not incorporated into agreement); id. at 537, 641 A.2d at 1338 (Morse, J., concurring) (stating "the family court has the authority to determine the enforceability of contracts between divorcing parties as part of the property settlement"). Here, the agreement at issue is a prenuptial agreement and not a postnuptial agreement. Because both the postnuptial agreement in Allen and the prenuptial agreement here between husband and wife were made in contemplation of a divorce and described the parties' preferred distribution of property in the event of a divorce, we see no reason to distinguish the two types of agreements for the purpose of the jurisdictional question addressed in this case.

otherwise rendering the separate property of the other party worthless, unusable, dramatically damaged to the point of requiring repair and replacement." Husband also argued that wife did not meet her obligation under the agreement to pay her required share of household expenses and taxes. Because husband was alleging breaches of the premarital agreement itself and a breach of the implied covenant of good faith and fair dealing related to that agreement, the family division could adjudicate those claims.[3] See Carmichael v. Adirondack Bottled Gas Corp. of Vt., 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993) ("An underlying principle implied in every contract is that each party promises not to do anything to undermine or destroy the other's rights to receive the benefits of the agreement.").

¶ 20. In declining to address husband's claims, the family division pointed out that husband's requests were confusing in that he was both seeking to enforce the agreement and seeking damages for its alleged breach. Husband was not, however, afforded an opportunity to clarify his position and to articulate what remedy he was seeking for the alleged breaches.

¶ 21. The family division also expressed that it did not have jurisdiction over the parties' separate property, which had been allocated in the premarital agreement. As explained above, the family division has jurisdiction over all property allocated as part of a divorce. Supra, ¶ 14. In addition, while the family division may not have jurisdiction over a freestanding breach-of-contract claim, it has authority to adjudicate the division of property and to interpret and enforce the parties' premarital agreement. Compare supra, ¶ 15 (describing that family division has jurisdiction over enforceability and interpretation of premarital agreements), with Maier v. Maier, 2021 VT 88, ¶ 35, 216 Vt. 33, 266 A.3d 778 (holding "the family division does not have jurisdiction to adjudicate an action to enforce a contract between the parties that is untethered to a

---

[3] In the family division, wife argued that husband was claiming damages from an alleged tort—damage done by wife to the marital home—and not a breach of contract. Wife does not make this argument on appeal. As such, we do not address it.

divorce"). Insofar as the family division may instead have been commenting on the appropriate breadth of its discretion in allocating the marital property as a result of the comprehensive language in parties' premarital agreement, we leave it to the court to clarify on remand.

¶ 22. Ultimately, we do not reach the question of whether husband's claims have any merit. The family division is better suited on remand to create a more fully developed record regarding the alleged breaches, determine if they are material, and consider any remedies, including any potential waivers of the contractual provisions. Wood v. Wood, 135 Vt. 119, 121, 370 A.2d 191, 192 (1977) ("It is the tradition of constitutional common law that the establishment of legal doctrine derives from the decision of actual disputes, not from the giving of solicited legal advice in anticipation of issues.").

¶ 23. We remand to the family division to address whether wife materially breached the premarital contract as husband alleges and, if so, to determine appropriate remedies applying contract principles consistent with our precedent regarding premarital agreements.

Reversed and remanded.

FOR THE COURT:

_____

Associate Justice